# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

JSW Steel USA Ohio, Inc.,

              **Plaintiff,**

    **v.**

**Marubeni-Itochu Steel America, Inc.,**

              **Defendant.**

**Case No. 2:20-cv-3415**

**Judge Michael H. Watson**

**Magistrate Judge Jolson**


## ORDER

Marubeni-Itochu Steel America, Inc. ("Defendant") moves the Court to reopen discovery.  Def.'s Mot., ECF No. 26.  JSW Steel USA Ohio, Inc. ("Plaintiff") opposes.  Pl.'s Resp., ECF No. 28.

Defendant's motion prompted the Court to reconsider its prior Opinion and Order, ECF No. 20.  In that Opinion and Order, the Court presumed that Defendant was challenging only the *existence* of a contract—and that Defendant conceded the existence of the other breach-of-contract elements.  Based upon Defendant's current motion, it appears that presumption was wrong.

Before ruling on Defendant's motion to reopen discovery, the Court finds it prudent to revisit its prior Opinion and Order.  Pursuant to Federal Rule of Civil Procedure 54(b), any order that adjudicates fewer than all the claims may be revised at any time before entry of final judgment.

Accordingly, this Court **VACATES** its prior Opinion and Order, ECF No. 20, and issues the following.

## OPINION AND ORDER

The parties, JSW Steel USA Ohio, Inc. ("Plaintiff") and Marubeni-Itochu Steel America, Inc. ("Defendant"), have filed cross motions for summary judgment. ECF Nos. 14 & 15. For the following reasons, Defendant's motion is **DENIED**, and Plaintiff's motion is **GRANTED IN PART**.

### I.    FACTS

Plaintiff is a steel manufacturing company with a manufacturing plant in Mingo Junction, Ohio. Compl. ¶ 6, ECF No. 3. Defendant is a steel and aluminum processor based in New York. Tanaka Decl. ¶ 3, Def.'s Mot. Ex. A, ECF No. 15-1 ("Tanaka Decl."); Compl. ¶ 2, ECF No. 3. Before negotiating the order at issue, Defendant had purchased products from Plaintiff on one prior occasion. Compl. ¶ 7, ECF No. 3.

The parties began negotiating the steel order at issue on February 19, 2020. Raimondi Decl. 30–31, Pl.'s Mot. Ex. A, ECF No. 14-1("Raimondi Decl."); Tanaka Decl. 33, ECF No. 15-1. They went back and forth negotiating various terms, including the price, quantity, size, grade, and delivery details of a proposed order. Tanaka Decl. 20–33, ECF No. 15-1. Plaintiff's representative mentioned three times during these conversations that he would need to get internal approval for an order. Raimondi Decl. 21–22, 24, ECF No. 14-1.

On March 3, 2020, a phone conversation took place between the parties. *Id.* at 19.  Following that conversation, the same day, Defendant emailed Plaintiff, "per [the] phone instruction, we accept net 45 days . . . ." *Id.*  In that same email, Defendant said, "Following are details of our P[urchase] O[rder]," and the email contained details for three "lots," including delivery, shipment, and payment terms. *Id.*  Plaintiff replied to that email saying, "Thank you . . . .  We will get these in our system tomorrow and send acknowledgments." *Id*.  The next morning, Plaintiff followed up, informing Defendant that one of the steel sizes would not work, asking, "Do you want to add something else or just cancel this line?" *Id.* at 18.  Plaintiff did not attach an acknowledgment form to that email and instead wrote, "We will send acknowledgment after your confirmation." *Id.*

The emails reflect that the parties also had a phone conversation the next morning. *Id.* at 17.  Then, Defendant responded about the steel sizes not working, giving new numbers for the order. *Id.*  Plaintiff responded on March 5, 2020, saying, "Thank you for the update we have updated the tonnage for that line 12 from 220 to 286" to which Defendant replied, "Thank you very much for your confirmation." *Id.* at 16–17.  The parties continued to make modifications on March 5, 2020, and March 6, 2020, with Defendant emailing requests and Plaintiff confirming the changes were made both times. *Id.* at 10–13.

Then, on March 9, 2020, Defendant sent Plaintiff an email with three attached "Purchase Confirmation and Contract" documents. *Id.* at 9–10, Ex. B. Plaintiff responded the next day with three "acknowledgment" documents. *Id.* at

9, Ex. C. At that point, the parties agreed on the "size assortment/specification/applications/prices/shipments." Pl.'s Mot. 9, ECF No. 14; Tanaka Decl. 6, ECF No. 15-1. But Plaintiff's documents and Defendant's documents contained different standard terms and conditions, with "[Plaintiff's] terms being seller-friendly and [Defendant's] terms being buyer-friendly." Pl.'s Mot. 10, ECF No. 14; Def.'s Mot. 5, ECF No. 15.

The parties went back and forth regarding which documents the other would be willing to sign. Defendant asked for its "Purchase Confirmation and Contract" documents to be signed and returned on March 9, 2020, March 10, 2020, and March 12, 2020. Raimondi Decl. 7–9, ECF No. 14-1. On March 12, 2020, Plaintiff responded to Defendant's requests, writing:

> Thank you for your time on the phone. As discussed, we do not sign the [purchase order] from customers but we do send our acknowledgment with terms and conditions. Can you go through our acknowledgments and let us know if there is any concern on the acknowledgment. Even last time with your order we did not sign your [purchase order]. We just sent our acknowledgment. Let us know if the above works. If not we will have to involve our general coun[sel] and they will have to discuss with your coun[sel] and then we can proceed to sign.

*Id.* at 7. On March 18, 2020, Defendant responded to Plaintiff's email asking, "Would you please be kind enough to advise us what is wrong with our [purchase order]?" *Id.* at 6.

Without a response from Plaintiff, on March 23, 2020, Defendant informed Plaintiff that it was "no longer able to honor such 3 [purchase orders] due to [Plaintiff's] rejection of signatory in spite of [Defendant's] repeated requests." *Id.*

at 4–5.  Also in that email, Defendant noted that COVID had an impact on the company and that although the price of crude oil was $47.25 at the time the parties "negotiated a business," it had since decreased to $22.92.  *Id.* at 5. Defendant also said that while it was "hearing of order cancellations throughout the country," it would be willing to "cooperate but [would] need to adjust the pricing."  *Id.*

Plaintiff responded that it could not accept Defendant's rejection, as the order had already been halfway produced, with the first barge leaving for delivery the next day.  *Id.* at 3–5.  Defendant answered that it would "stand on [it's] cancellation based on [Plaintiff's] failure to sign [Defendant's documents]."  *Id.* at 1–2.  Based on Defendant's representation that it would not accept the goods, Plaintiff ceased production on the order, and resold the product it had already produced.  Pl.'s Mot. 6, ECF No. 14.

In its Complaint, Plaintiff asserts two causes of action: (1) breach of contract; and (2) declaratory judgment.  Compl. ¶¶ 45–54, ECF No. 3.  The parties have now filed cross motions for summary judgment.  ECF Nos. 14 & 15. This matter has been fully briefed and is ripe for review.

## II.    STANDARD OF REVIEW

The standard governing summary judgment is set forth in Federal Rule of Civil Procedure 56(a), which provides: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The Court must grant summary judgment if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Van Gorder v. Grand Trunk W. R.R., Inc.*, 509 F.3d 265, 268 (6th Cir. 2007).

When reviewing a summary judgment motion, the Court must draw all reasonable inferences in favor of the nonmoving party, who must set forth specific facts showing there is a genuine dispute of material fact for trial, and the Court must refrain from making credibility determinations or weighing the evidence. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Pittman v. Cuyahoga Cty. Dept. of Children and Family Serv.*, 640 F.3d 716, 723 (6th Cir. 2011). The Court disregards all evidence favorable to the moving party that the jury would not be required to believe. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000). Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal citations and quotation marks omitted); *see also Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009).

The Court is not "obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). The Court

may rely on the parties to call attention to the specific portions of the record that demonstrate a genuine issue of material fact. *Wells Fargo Bank, N.A. v. LaSalle Bank N.A.*, 643 F. Supp. 2d 1014, 1022 (S.D. Ohio 2009).

## III. ANALYSIS

This action was removed from Ohio state court under this Court's diversity jurisdiction; therefore, Ohio substantive law applies. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). Plaintiff brings a breach of contract claim arising out of the parties' negotiations for steel, which is a good. Article 2 of the Uniform Commercial Code, as adopted by Ohio, applies to transactions involving the sale of goods and, accordingly, governs the claims in this case.

The parties primarily argue in their briefs about the *existence* of a contract. If no contract exists, there is no breach of contract. Therefore, the Court starts its analysis with a determination of whether the parties formed a contract. Because the Court finds a contract exists, it next considers whether Defendant breached the contract. Finally, the Court considers damages.

## A. Existence of a contract.

Ohio Revised Code § 1302.07 provides:

Formation in general:

(A) A contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract.

(B) An agreement sufficient to constitute a contract for sale may be found even though the moment of its making is undetermined.

Case No. 2:20-cv-3415                                      Page 7 of 23

> (C) Even though one or more terms are left open a contract for sale does not fail for indefiniteness if the parties have intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy.

Plaintiff contends that a contract between the parties arose on March 3, 2020, when Defendant sent Plaintiff purchase order numbers and details (an offer), and Plaintiff replied, "We will get these in our system tomorrow and send acknowledgments" (an acceptance).  Pl.'s Mot. 7, ECF No. 14.  Plaintiff's argument is incorrect because Plaintiff's response did not constitute an acceptance.  However, although no contract was formed based on that email response, a contract did form between the parties.  Defendant's arguments to the contrary are unavailing.

### 1. Defendant's March 3, 2020 email constituted an offer.

At common law, an offer is defined as a "manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *Leaseway Distribution Ctrs., Inc. v. Dep't of Admin. Services*, 550 N.E.2d 955, 961 (Ohio Ct. App. 1988) (quoting Restatement (Second) of Contracts § 24 (1981)); *see also* Ohio Rev. Code § 1302.09(A)(1).

Traditionally, a purchase order is deemed an offer.[1]  *Babcock & Wilcox Co.*

*v. Hitachi Am., Ltd.*, 406 F. Supp. 2d 819, 827 (N.D. Ohio 2005); *Am. Bronze*

*Corp. v. Streamway Prod.*, 8 Ohio App. 3d 223, 227 (Ohio Ct. App. 1982).  Here,

Defendant did not submit a purchase order document on March 3, 2020, but did

send Plaintiff a detailed email, which read in part: "[f]ollowing are details of our

P[urchase] O[rder]."  The email contained lot numbers, quantities, and shipping,

delivery, price, and payment terms. Raimondi Decl. 19, ECF No. 14-1.  This

email constituted an offer.

### 2. Plaintiff did not accept Defendant's offer on March 3, 2020.

Although the Court agrees with Plaintiff that Defendant's email on March 3,

2020, constitutes an offer, the Court disagrees that Plaintiff's response that it

would "get these in our system tomorrow and send acknowledgments" was an

acceptance of the offer.  Ohio law provides that "unless otherwise unambiguously

indicated by the language or circumstances: . . . an offer to make a contract shall

be construed as inviting acceptance in any manner and by any medium

reasonable in the circumstances."  Ohio Rev. Code § 1302.09(A).  However,

---

[1] Sometimes though, a purchase order can constitute an acceptance.  This occurs when a price quotation is "sufficiently detailed and it 'reasonably appear[s] from the price quotation that assent to that quotation is all that is needed to ripen the offer into a contract.'"  *Dyno Const. Co. v. McWane, Inc.*, 198 F.3d 567, 572 (6th Cir. 1999) (citations omitted).  The facts of this case present a good argument for Plaintiff that Defendant's March 3, 2020 email constituted an acceptance of Plaintiff's offer.  The parties seemingly had already agreed to the terms, and Defendant appeared to be only confirming details in the March 3, 2020 email or formally accepting the offer.  However, Plaintiff does not allege the same, and neither party includes any information about the phone call that took place.  So, the Court is left to continue wading through the parties' emails.

future intent to accept an offer does not constitute present acceptance of an offer. *Camden v. Kain*, No. 93APE11-1518, 1994 WL 232233, at *3 (Ohio Ct. App. May 26, 1994) ("A mere expression of a future intent to enter into a contract does not bind either party nor result in an enforceable contract."). "As long as both parties contemplate that something remains to be done to establish contractual relationship, no contract has been made." *Gen. Motors Corp. v. Keener Motors, Inc.*, 194 F.2d 669, 676 (6th Cir. 1952).

Here, Plaintiff expressed *at most* an intent to accept Defendant's offer the next day; its email reads as a confirmation of receipt. Although Plaintiff maintains that its email was definite enough to amount to an acceptance, it was only definite in saying Plaintiff would accept the next day. Plaintiff did not accept Defendant's offer as a result of its March 3, 2020 email.

Then, the next day, Plaintiff emailed Defendant saying "All sizes look good except .127 min x 72 which is line 7 of lot 1. . . . Do you want to add something else or just cancel this line? We will send acknowledgment after your confirmation." Raimondi Decl. 18, ECF No. 14-1. This response was not an acceptance of Defendant's offer.

### 3. The parties had a meeting of the minds.

After Plaintiff sent that email on March 4, 2020, a phone call took place between the parties. Raimondi Decl. 17, ECF No. 14-1. No party offered evidence regarding what was said during that phone call. Defendant then emailed Plaintiff a list of changes requested for "LOT-1." *Id.* at 17–18. This

constituted a new offer. In response, Plaintiff said "Thank you for the update we have updated the tonnage for that line 12 from 220 to 286." *Id.* This email constituted an acceptance. The parties had a meeting of the minds, and a contract formed. This finding conforms with the UCC's "liberal view of what is required to create a contract for the sale of goods." *Am. Signature, Inc. v. Extreme Linen*, LLC, No. 2:12-CV-00601, 2015 WL 1476751, at *16 (S.D. Ohio Mar. 31, 2015) (citing *Am. Bronze Corp. v. Streamway Prods.*, 8 Ohio App. 3d 223 (Ohio Ct. App. 1982) and *Architectural Metal Sys., Inc. v. Consol. Sys., Inc.*, 58 F.3d 1227, 1230 (7th Cir.1995)); *see also* Ohio Rev. Code § 1302.07(B) ("An agreement sufficient to constitute a contract for sale may be found even though the moment of its making is undetermined.").

After the contract formed, Defendant responded to Plaintiff saying, "Thank you very much for your confirmation." Raimondi Decl. ¶ 16, ECF No. 14-1. *Id.* at 16. In the same email, Defendant requested a modification to the contract, namely that Plaintiff would "change shipping marks as follows." *Id.* Plaintiff responded, "no problem . . . I have made the P[urchase] O[rder] changes you have marked below. Everything is updated at this point, thank you!" *Id.* A similar request was made on March 6, 2020, when Defendant sent a bullet point list of a few changes it was "kindly" requesting. *Id.* at 13. Plaintiff responded to each request for modification individually. *Id.* Before formal purchase order and acknowledgment documents were sent, Plaintiff had even told Defendant that not

only were all the modifications it had requested approved and updated, so were the "production work orders." *Id.* at 10.

Parties to a contract are free to modify it. Ohio Rev. Code § 1302.12; U.C.C. § 2–209(1); *Roth Steel Prod. v. Sharon Steel Corp.*, 705 F.2d 134, 145 (6th Cir. 1983) (explaining that "[t]he ability of a party to modify a contract which is subject to Article Two of the Uniform Commercial Code is broader than common law, primarily because the modification needs no consideration to be binding" (citations omitted)). Accordingly, these modifications by the parties do not negate the existence of a contract.

### 4. Defendant's arguments that no contract formed are unavailing.

Defendant makes several arguments that the Court should not find a contract exists between the parties. First, Defendant argues that no contract exists because the parties had the intent to reduce the agreement to writing. "In Ohio, when parties intend that their agreement shall be reduced to writing and signed, no contract exists until the written agreement is executed." *Curry v. Nestle USA, Inc.*, 225 F.3d 658, *7 (6th Cir. 2000) (internal citation omitted).

In support of this argument, Defendant points to its March 3, 2020 offer, explaining that in that "very communication" Defendant stated it would be "issuing [purchase orders] to formalize it's order of the goods." Def's Reply 1, ECF No. 19. Not so, based on the Court's read. Nowhere in Defendant's March 3, 2020 email does it state it will be issuing purchase orders, let alone that the purchase orders will finalize the order. Still, Defendant maintains that the "emails prior to

the exchange of purchase orders and acknowledgments all contemplated future approval or confirmation in the form of written purchase orders and acknowledgments," also pointing to Plaintiff's need to get "internal approval" on the order. Def.'s Mot. 11 n.2, ECF No. 15.

Plaintiff's response is that the "emails plainly reflect present intent to proceed with the orders, not to engage in continuing negotiations, not to continue development, and not to seek further negotiations." Pl.'s Reply 9, ECF No. 17. The Court agrees. Plaintiff's representative mentioned his need to get internal approval for an order three times during the parties' preliminary negotiations. Raimondi Decl. 21–22, 24, ECF No. 14-1. However, after the contract was formed as outlined above, Plaintiff never mentioned a need to get approval again. Further, Plaintiff did not push Defendant to send along formal documents. Instead, the subsequent email conversations make clear that the parties had a meeting of the minds and additional approval was not needed.

Second, Defendant argues that the parties could not have contracted because they did not agree on all essential terms of the contract. Def.'s Response 5, ECF No. 16 (citing *E.C. Styberg Eng'g Co. v. Eaton Corp.*, 492 F.3d 912, 918 (7th Cir. 2007)). First, the Court notes that while it is true that under Ohio common law a contract must be "specific as to its essential terms" in order to be enforceable, *Alligood v. Procter & Gamble Co.*, 72 Ohio App. 3d 309, 311 (Ohio Ct. App. 1991), courts are split on whether the Ohio Uniform Commercial Code similarly requires such agreement on essential terms. *Compare Tubelite*

*Co. v. Original Sign Studio, Inc.*, 176 Ohio App. 3d 241, 248 (Ohio Ct. App. 2008) ("Unlike the common law, the Ohio Uniform Commercial Code does not require that all essential terms of a contract be definite in order for the contract to be enforceable.") and Ohio Rev. Code § 1302.07(C) ("Even though one or more terms are left open a contract for sale does not fail for indefiniteness if the parties have intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy") *with E.C. Styberg Eng'g Co.*, 492 F.3d at 918 ("Notably, however, nothing in the UCC or Ohio's code eliminates the requirement that, for a contract to be enforceable, it 'must . . . be specific as to its essential terms, such as the identity of the parties to be bound, the subject matter of the contract, consideration, a quantity term, and a price term.'" (citation omitted)) and *Am. Signature, Inc. v. Extreme Linen, LLC*, No. 2:12-CV-00601, 2015 WL 1476751, at *16 (S.D. Ohio Mar. 31, 2015) (same). Nonetheless, the Court does not need to determine whether an agreement *must* be reached on all essential terms, because here, as Plaintiff argues, the term at issue—flatness—is included in the contract. *See* Pl.'s Reply 3, ECF No. 18.

When Defendant sent Plaintiff an offer on March 3, 2020, it included an "attached specification" which listed that there could be "NO OSCILLATION OR COIL BREAKS, FOR LEVELING INTO PANEL FLAT SHEETS/PLATES." Compl. Ex. A, ECF No. 3. Defendant is concerned that Plaintiff's acknowledgment documents "did not recognize, confirm, or even mention" these flatness requirements. Def.'s Mot. 5, ECF No. 15. That the acknowledgment

documents did not mention the flatness requirement is immaterial, because a contract formed before the acknowledgment was sent. *See generally supra* Section A.3. And, when the contract formed, Plaintiff did not object to the term. *Cf. Energy Mktg. Servs., Inc. v. Homer Laughlin China Co.*, 186 F.R.D. 369, 375 (S.D. Ohio 1999), *aff'd*, 229 F.3d 1151 (6th Cir. 2000) (finding no meeting of the minds about a dickered-for term when one party "insisted upon" the terms removal from the contract and the other "vehemently objected"); *All. Wall Corp. v. Ampat Midwest Corp.*, 17 Ohio App. 3d 59, 62 (Ohio Ct. App. 1984) (finding no meeting of the minds about an essential term—the shipment date—when the seller did not expressly agree to the buyers requested shipment date but instead proposed a "tentative shipping date"). So, the flatness term is a term of the contract. This finding conforms with Ohio Revised Code § 1302.07(C), because the parties here "intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy."

Finally, Defendant argues that Plaintiff's "acceptance" was expressly conditioned on Defendant assenting to all of Plaintiff's terms, and, therefore, no contract formed.[2] If Plaintiff's acceptance was its acknowledgement form, Defendant's argument would prevail. If an acceptance is expressly made conditional on assent to additional or different terms, it is not a valid acceptance.

---

[2] Plaintiff's acknowledgment form provided that "ALL CUSTOMER ORDERS AND ACCEPTANCES ARE EXPRESSLY CONDITIONED UPON ASSENT TO THE TERMS AND CONDITIONS PRINTED HEREON." Tanaka Decl. PAGEID # 326, ECF No. 15-1.

*See McJunkin Corp. v. Mech., Inc.*, 888 F.2d 481, 488 (6th Cir. 1989) (finding no

contract where an acknowledgment form read "ACCEPTANCE OF THIS

CONTRACT IS EXPRESSLY CONDITIONED ON PURCHASER'S . . . ASSENT

TO ALL OF THE . . . CONDITIONS"). Indeed, Ohio law provides that:

> A definite and seasonable expression of acceptance or a written
> confirmation that is sent within a reasonable time operates as an
> acceptance even though it states terms additional or different from
> those offered or agreed upon, *unless acceptance is expressly made
> conditional on assent to the additional or different terms.*

Ohio Rev. Code § 1302.10(A) (emphasis added); *see also* UCC § 2-207.

In this case, however, a contract had already formed by the time Plaintiff

sent its acknowledgment document. So, even though that document contained

language making it expressly conditioned on Defendant's assent to its terms, it

does not negate the already formed contract. Accordingly, this statute is not

directly on point. Instead, the Comments to Ohio Revised Code § 1302.10

provide that:

> [A] proposed deal which in commercial understanding has in fact been
> closed is recognized as a contract. Therefore, any additional matter
> contained in the confirmation or in the acceptance falls within
> subsection (2) [(B)] and must be regarded as a proposal for an added
> term unless the acceptance is made conditional on the acceptance of
> the additional or different terms.

Ohio Rev. Code Ann. § 1302.10, Official Comment 2. Here, a commercial

understanding was closed, and a contract formed. Accordingly, the terms

contained in the acknowledgment "are to be construed as proposals for addition

to the contract." Ohio Rev. Code Ann. § 1302.10(B); *see also Waukesha*

*Foundry, Inc. v. Indus. Eng'g, Inc.*, 91 F.3d 1002, 1007 (7th Cir. 1996) (applying the equivalent UCC provision and explaining that "[o]nce the existence of a contract is established, we must refer to UCC § 2–207(2) to determine which, if any, additional terms contained in subsequent written confirmations become part of the agreement"). Whether the terms in the acknowledgment documents did in fact become part of the contract is not an analysis the Court must undertake at this juncture.

**B.      Defendant breached the contract.**

Plaintiff next argues that Defendant breached the contract when it told Plaintiff via email that it was "no longer able to honor" the contract. Pl.'s Mot. 11, ECF No. 14. Defendant does not respond to Plaintiff's argument.

Plaintiff proceeds under a theory of anticipatory repudiation. "Anticipatory repudiation 'centers upon an overt communication of intention or an action that renders performance impossible or demonstrates a clear determination not to continue with performance.'" *Sherwin-Williams Co. v. Dynamic Auto Images, Inc.*, No. SACV161792JVSSSX, 2017 WL 3081822, at *3 (C.D. Cal. Mar. 10, 2017) (quoting Ohio Rev. Code § 1302.68, Official Comment 1). If a statement is fairly read as one that "amounts to a statement of intention not to perform except on conditions which go beyond the contract, it becomes a repudiation." Ohio Rev. Code § 1302.68, Official Comment 2; *see also Doral Steel, Inc. v. Gray Metal Prod., Inc.*, 672 F. Supp. 2d 798, 800 (N.D. Ohio 2009); *Sherwin-Williams Co.,* 2017 WL 3081822 at *4 (applying Ohio law and finding repudiation occurred

when the defendant's statements "demonstrate[d] that [the defendant] will not stand by the current agreement with [plaintiff] unless the parties agree to new terms that go beyond the Second Amended Agreement").

Here, Defendant emailed Plaintiff saying it was "no longer able to honor such 3 [purchase orders]." Raimondi Decl. 4–5, ECF No. 14-1. In that same email, Defendant noted that COVID had an impact on the company and that although the price of crude oil was $47.25 at the time the parties "negotiated a business," it had since decreased to $22.92. *Id.* at 5. Defendant also said that although it was "hearing of order cancellations throughout the country," it would be willing to "cooperate but [would] need to adjust the pricing." *Id.* Plaintiff responded that it could not accept Defendant's cancellation and let Defendant know that the "order is almost ready" with one barge scheduled to take off the very next day. *Id.* at 3. Defendant responded that it would "stand on [its] cancellation." *Id.* at 2. At that point, Plaintiff resold the steel it had already produced for the order, and did not complete any further manufacturing. *Id.* at PAGEID # 180.

A demand for more than the contract calls for "is not in itself a repudiation." Ohio Rev. Code § 1302.68, Official Comment 2. It is only when, "under a fair reading [the demand] amounts to a statement of intention not to perform except on conditions which go beyond the contract, it becomes a repudiation." Ohio Rev. Code § 1302.68, Official Comment 2. Here, Defendant made clear that it would only abide by its contractual agreement if Plaintiff lowered the price.

Raimondi Decl. 2–5, ECF No. 14-1. When Plaintiff was unwilling to do so, Defendant stood by its cancellation and was clear it would not perform on the contract. This was a repudiation.

Once a party repudiates, the repudiation constitutes a breach so long as the non-repudiating party treats it as such. *See D & S Mach. Prod., Inc. v. Thyssenkrupp Bilstein of Am., Inc.*, 434 F. App'x 446, 450–51 (6th Cir. 2011). Plaintiff treated Defendant's repudiation as a breach—it stopped producing materials for the order and resold the materials it had already produced. Accordingly, Defendant breached the contract.

## C. Damages remain at issue.

Having found the existence of a contract and anticipatory repudiation of that contract, the Court must now consider the appropriate damages. The parties devote very little briefing to this issue, and the Court has concerns that warrant holding a damages hearing. Nonetheless, the Court believes it may be helpful to outline the legal framework for Plaintiff's possible damages.

When a buyer repudiates, an aggrieved seller may:

(A) withhold delivery of such goods;

(B) stop delivery by any bailee as provided in section 1302.79 of the Revised Code;

(C) proceed under section 1302.78 of the Revised Code respecting goods still unidentified to the contract;

(D) resell and recover damages as provided in section 1302.80 of the Revised Code;

(E) recover damages for non-acceptance as provided in section 1302.82 of the Revised Code or in a proper case the price as provided in section 1302.83 of the Revised Code;

(F) cancel.

Ohio Rev. Code § 1302.77; Ohio Rev. Code § 1302.68 (providing that after repudiation occurs, an aggrieved party may seek "any remedy for breach as provided in sections 1302.77").

Plaintiff identifies two general categories of product for which it should recover damages: the product it already produced and the product it had not yet produced. Defendant responds that, as to both categories, Plaintiff failed to properly calculate or support its damages finding. Def.'s Response 10–11, ECF No. 16. Plaintiff replies that it would be "happy to oblige" if the Court prefers to have a damages hearing. Pl.'s Mot. 12, ECF No. 14. The Court will address each category in turn.

## 1. Already produced product.

Plaintiff argues that, in line with Ohio Revised Code § 1302.77(D), it resold the product it had already produced as provided in Ohio Revised Code § 1302.80. Pl.'s Mot. 12–13, ECF No. 14. Section 1302.80 provides that a seller can resell the goods at issue and when "the resale is made in good faith and in a commercially reasonable manner the seller may recover the difference between the resale price and the contract price together with any incidental damages allowed under section 1302.84 of the Revised Code, but less expenses in consequences of the buyer's breach." Ohio Rev. Code § 1302.80(A). When an

aggrieved seller chooses to resell products under this statute, though, they must notify the breaching buyer of such sale, and the resale "must be reasonably identified as referring to the broken contract." Ohio Rev. Code § 1302.80(B), (C), (D).

Neither party addresses whether the sales here were made in a commercially reasonable manner.[3] *See California Airmotive Corp. v. Jones*, 415 F.2d 554, 556 (6th Cir. 1969). Similarly, neither party addresses whether notice of the sale was given to Defendant. *See Mod. Marine, Inc. v. Van Allen*, No. 42922, 1981 WL 10432, at *2 (Ohio Ct. App. June 25, 1981). Accordingly, the Court cannot enter judgment based on the briefing.

## 2. Not-yet-produced product.

As for the not-yet-produced product, Plaintiff, pursuant to Ohio Revised Code § 1302.77(E) and Ohio Revised Code § 1302.82, seeks to "recover the profit it would have made on those unproduced products." Pl.'s Mot. 12, ECF No. 14.

An aggrieved seller is entitled damages in the amount of "the difference between the market price at the time and place for tender and the unpaid

---

[3] It is not clear to the Court whether it is Plaintiff's burden to prove the sale is commercially reasonable or Defendant's burden to disprove it. *Compare Metal Seal Precision, Ltd. v. Good Time Outdoors, Inc.*, 128 N.E.3d 678, 693–94 (Ohio Ct. App. 2018) (finding the burden is on the aggrieved seller) *with Dean Tech., Inc. v. CE Power Sols., LLC*, 96 F. Supp. 3d 736, 752 (S.D. Ohio 2015) (citing *Young v. Frank's Nursery & Crafts, Inc.*, 58 Ohio St.3d 242, 244 (1991)) (finding the burden is on the repudiating buyer). However, Plaintiff has not alleged the resale was made in a commercially reasonable manner, so even though Defendant does not dispute the reasonableness, the Court cannot merely grant summary judgment on the issue.

contract price together with any incidental damages provided in section 1302.84 of the Revised Code, but less expenses saved in consequence of the buyer's breach." Ohio Rev. Code § 1302.82(A).  Market price is calculated "according to the price of such goods prevailing at the time when the aggrieved party learned of the repudiation." Ohio Rev. Code § 1302.97(A).  However, if that damages calculation is "inadequate to put the seller in as good a position as performance would have done," a seller's damages should instead be calculated by adding "the profit, including reasonable overhead, which the seller would have made from full performance by the buyer, together with any incidental damages provided in section 1302.84 of the Revised Code, due allowance for costs reasonably incurred, and due credit for payments or proceeds of resale." Ohio Rev. Code § 1302.82(B).  In other words, recovery of lost profits is the exception, not the rule.

It is not clear precisely which path Plaintiff attempts to follow in reaching its damages calculation.  Plaintiff explains it is entitled to the "profit it would have made on [the] unproduced products" under § 1302.82(B).  Pl.'s Mot. 12, ECF No. 14.  It offers no explanation for why the usual damages provided in § 1302.82(A) are not sufficient in this case.  Confusingly, however, when detailing the calculation of "profit" under § 1302.82(B) Plaintiff explains:

> The profit on [the] unproduced product is measured by the difference between the unpaid contract price and the market price at time of tender. The best evidence of market price is the average resale price that Seller was able to generate through its resales after the breach, which is $0.2223 per pound.

*Id.* That is to say, Plaintiff's calculation for "lost profit" damages appears to be an attempt to use the usual calculation for damages under the Ohio Revised Code—the very calculation Plaintiff argues is insufficient. Without understanding which statute Plaintiff proceeds under, the Court cannot properly assess the accuracy of Plaintiff's damages calculation at this juncture.

## IV.    CONCLUSION

For these reasons, Defendant's Motion is **DENIED**; Plaintiff's motion is **GRANTED IN PART**. The parties are **ORDERED** to mediate the issue of damages; the Court will contact the parties to set up a time for mediation. If a resolution is not reached, the Court will hold a damages hearing.

**IT IS SO ORDERED.**

**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**